IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CR-10-235-D (Case No. CIV-15-879-D) |
| TRINA TAHIR, | ) ) ) | |
| Defendant. | ) | |

# **O R D E R**

Before the Court is Defendant Trina Tahir's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence [Doc. No. 314]. Upon consideration of the Motion and supporting brief [Doc. No. 323], the government's response [Doc. No. 325], and the case record, the Court finds that Defendant is not entitled to relief and the Motion should be denied.[1]

## **Factual and Procedural Background**

Defendant pleaded guilty on April 6, 2011, to a money laundering offense as charged in Count 12 of the Indictment, of engaging in a financial transaction involving proceeds of unlawful activity (wire fraud) in violation of 18 U.S.C. § 1956(a)(1)(B)(i). The plea agreement negotiated by Defendant's retained counsel, Stephen Jones and April Davis, provided for the dismissal of eight other charges at sentencing: Count 1, conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; Counts 2, 6, 10 and 13,

---

[1] No evidentiary hearing is needed where the existing record conclusively shows the defendant is not entitled to relief. *See United States v. Lopez*, 100 F.3d 113, 121 (10th Cir. 1996); 28 U.S.C. § 2255(b).

wire fraud in violation of 18 U.S.C. § 1343; and Counts 3, 7 and 14, additional instances of money laundering. All charges arose from a mortgage fraud scheme carried out through Defendant's real estate agency, T&T Realty, during 2006 and 2007. At the time, Defendant was a licensed real estate broker; codefendant Michael Gipson was a real estate agent employed by T&T Realty; and codefendant Derrick Smith was a real estate investor and proprietor of Mortgage Processing Service or MP Services.

Mr. Gipson pleaded guilty to conspiracy as charged in Count 1 and wire fraud as charged in Count 8. Mr. Smith proceeded to trial on April 11, 2011, and a jury found him guilty of the conspiracy charge.[2] On August 30, 2011, Mr. Smith was sentenced to a 40-month term of imprisonment and ordered to pay restitution of $369,355.54.[3] On October 26, 2011, Mr. Gipson was sentenced to concurrent four-month terms of imprisonment and ordered to pay restitution of $335,070.55.

After Defendant's presentence investigation report was completed on October 18, 2011, she moved to withdraw her guilty plea. Defendant claimed the plea was not knowing and voluntary because, unknown to counsel, she was over-medicating herself with prescription drugs for anxiety and depression when she entered it. Defendant's attorneys also expressed concern about her mental functioning, and then moved for a judicial determination of mental competency. After a lengthy process of outpatient and inpatient

---

[2] The jury could not reach a verdict on charges of wire fraud and money laundering against Mr. Smith (Counts 2, 5, 6 and 9), and those charges were later dismissed without prejudice.

[3] Mr. Smith's conviction and sentence were affirmed on appeal. *See United States v. Smith*, 705 F.3d 1268 (10th Cir. 2013).

evaluations, and a March 2013 competency hearing, the Court found that Defendant was not suffering from a mental disease or defect that rendered her mentally incompetent to understand the criminal proceedings or assist in her defense, nor was she mentally incompetent when she entered her guilty plea. *See* Memorandum of Decision [Doc. No. 257] (sealed). As pertinent here, the Court found that Defendant was malingering, or exaggerating symptoms for secondary gain, in an effort to avoid her guilty plea after she learned that the presentence investigation report stated an advisory guideline range of imprisonment of 41 to 51 months.

After the competency decision, Defendant discharged her original attorneys and, through new counsel, filed an amended motion to withdraw her guilty plea. Defendant asserted claims of ineffective assistance of counsel and coercion by Mr. Jones and Ms. Davis, and alleged that she was innocent of all charges because she "was not aware the acts [she] did were illegal." *See* Tahir Aff. 7/3/13 [Doc. No. 271-1] ¶ 3. The government opposed the amended motion with an affidavit of Ms. Davis and copies of communications between Defendant and her former attorneys. The Court conducted an evidentiary hearing on November 21, 2013, and received documentary evidence and the testimony of witnesses, including Mr. Jones and Ms. Davis. In an order issued December 2, 2013, the Court made detailed findings and denied Defendant's original and amended motions because she "failed to establish a fair and just reason for withdrawing her guilty plea." *See* 12/2/13 Order [Doc. No. 291] at 6 (available at 2013 WL 6230627, *4) (hereafter, "Order"). The Court's pertinent findings regarding Defendant's assertion of innocence and the alleged ineffectiveness of her attorneys are discussed *infra*.

3

Following this ruling, the presentence investigation report was revised to address guideline provisions affected by Defendant's subsequent conduct, specifically, adding an enhancement for obstruction of justice and deleting a downward adjustment for acceptance of responsibility. At sentencing, the Court overruled Defendant's objections to these changes but sustained some objections originally prepared by Mr. Jones and Ms. Davis. After these rulings, the advisory guideline range of imprisonment remained 41-51 months. On March 26, 2014, the Court imposed a 24-month prison sentence followed by a three-year term of supervised release, and ordered restitution of $382,290.82. Defendant did not appeal but, instead, filed this timely § 2255 Motion.

**Defendant's Motion**

In her Motion, Defendant asserts a single claim of ineffective assistance of counsel presented in tandem: 1) Mr. Jones and Ms. Davis failed to interview six witnesses who would have supported a defense to the charges of the Indictment, and otherwise failed to investigate the defense, that she lacked the requisite intent to commit the offenses and acted in good faith; and 2) her original attorneys failed to consider whether Defendant had a viable good faith defense in advising her to accept the plea agreement. Defendant alleges that the attorneys' failure to investigate and adequately advise her caused her to enter a guilty plea that was not knowing and voluntary. *See* Def.'s Mot. [Doc. No. 314] at 10. She also argues in support of the Motion that a proper investigation would have developed evidence that could have resulted in a favorable jury verdict, and that proper advice regarding a good faith defense would have caused her to reject the government's plea offer and insist on going to trial. *See* Def.'s Supp. Br. [Doc. No. 323] at 10, 16-17, 20, 21-22.

4

## Standard of Decision

"A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *United States v. Harms*, 371 F.3d 1208, 1211 (10th Cir. 2004). Under this test, Defendant must show both that her "counsel committed serious errors in light of 'prevailing professional norms' and that there is a 'reasonable probability' that the outcome would have been different had those errors not occurred." *United States v. Haddock*, 12 F.3d 950, 955 (10th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 694); *accord United States v. Mora*, 293 F.3d 1213, 1217 (10th Cir. 2002); *see United States v. Barrett*, 797 F.3d 1207, 1214 (10th Cir. 2015) (defendant must show counsel's performance was "completely unreasonable, not merely wrong"). "An insufficient showing on either element is fatal to an ineffective-assistance claim, rendering consideration of the other element unnecessary." *Smith v. Duckworth*, 824 F.3d 1233, 1249 (10th Cir. 2016); *see Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011).

In the context of a guilty plea, the prejudice prong of *Strickland* requires Defendant to "show that there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see Premo v. Moore*, 562 U.S. 115, 131-32 (2011); *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005). This showing involves an objective component; "proof of prejudice requires a petitioner to show that 'a decision to reject the plea bargain would have been rational under the circumstances.'" *See Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir. 2013) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372

(2010)) (emphasis omitted). The assessment includes "objective factors such as whether an unmade evidentiary or legal discovery 'likely would have changed the outcome of a trial,' or whether a defense about which the defendant was not advised 'likely would have succeeded at trial.'" *Id.* at 1183 (quoting *Hill*, 474 U.S. at 59). A showing of prejudice also involves a subjective component, which "take[s] into account a particular defendant's own statements and actions in determining whether he would have insisted on going to trial." *Id.* Where a defendant claims a guilty plea was involuntary due to counsel's errors, the "defendant's statements on the record, 'as well as any findings by the judge accepting the plea, constitute a formidable barrier.'" *Romero v. Tansy*, 46 F.3d 1024, 1033 (10th Cir. 1995) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

## Discussion

### A. Counsel's Performance

Upon consideration of Defendant's allegations in light of the existing case record, the Court finds that Mr. Jones and Ms. Davis provided highly competent and zealous representation of Defendant, and that they did not overlook a defense of good faith.

Defendant alleges no facts and identifies no evidence that would show Mr. Jones and Ms. Davis failed to investigate and consider Defendant's assertions – made repeatedly during the representation – that she did not know her conduct violated the law and any errors in real estate matters were honest mistakes. Mr. Jones confirms in an affidavit submitted by the government in response to Defendant's Motion that the individuals listed in the Motion were suggested as potential witnesses by Defendant or a family member in late March of 2011. Most of these individuals had been previously identified and included

6

in his investigation; one declined to be interviewed; and two were attorneys whose information was not pertinent to the jury trial issues. *See* Jones Aff. 9/14/15 [Doc. No. 325-1], ¶ 3.[4] Mr. Jones makes clear that the issues of Defendant's intent and the defense of good faith were topics of discussion throughout the representation – beginning before the Indictment was issued – and that these issues were fully considered. *Id*. ¶ 4.[5]

Defendant's assertion of innocence was previously raised by the amended motion to withdraw her guilty plea that was filed through her new counsel before sentencing.[6] Defendant renews a prior argument that criminal liability for the money laundering offense to which she pleaded guilty was precluded by a good faith belief that her conduct was legal. *See* Def.'s Mot. at 3, 6-8; Def.'s Supp. Br. at 5, 11, 16-17, 19-22; *see also* Def.'s Am. Mot. Withdraw Plea [Doc. No. 271] at 9-13. To support her renewed argument, she presents

---

[4] For example, Aaron Dodson was the home builder whose properties were the subject of several transactions, and his efforts to sell an inventory of homes were at the heart of the case. His involvement in "a common builder bailout scheme" was well known to Mr. Jones and Ms. Davis, as shown by objections to the presentence report they prepared. *See* Final Presentence Report as revised Oct. 18, 2011 [Doc. No. 189] at 40.

[5] Like Defendant's unfounded complaint about the factual investigation conducted by Mr. Jones' firm, Defendant faults her attorneys for ignoring expert opinions provided by a defense witness who was retained "through counsels Jones and Davis to evaluate [her] case." *See* Def.'s Mot. at 9-10. The opinions expressed in the expert's "Sentencing Mitigation Report" (*id*. at 9) are reflected in objections to the presentence report prepared by Defendant's original counsel. *See supra* note 4. These objections regarding Defendant's role in the offense were sustained at sentencing.

[6] The original motion filed by Mr. Jones presented the issue as one of mental competence, but candidly stated in an explanation of the parties' plea negotiations that "Mrs. Tahir consistently advised that she did not know that any of her actions were against the law." *See* Def.'s Mot. Withdraw Guilty Plea [Doc. No. 201] at 2. Mr. Jones described in a supporting affidavit Defendant's statements about a belief that "what she was doing was legal" as examples of her mental confusion. *See* Jones Aff. 11/11/11 [Doc. No. 201-3], ¶ 9.

7

an affidavit that is similar to one she supplied (through her current counsel) with her amended motion to withdraw the guilty plea. *Cf.* Tahir Aff. 7/22/15 [Doc. No. 323-1] ¶ 4 ("I honestly believed that everything I did in relation to what I was charged with was correct and lawful."), *with* Tahir Aff. 7/3/13 [Doc. No. 271-1] ¶ 3 ("At all times, I thought everything I did was legal . . . ."). The Court previously held an evidentiary hearing regarding Defendant's claim, made detailed factual findings, and rejected it. *See* Order at 6-8 (2013 WL 6230627 at *4).

Like Defendant's prior motion, the present Motion is largely based on general assertions that Defendant thought everything she did was legal and that she took steps, such as hiring attorneys and discussing matters with others in the real estate industry, to insure the legality of her actions. Such statements are insufficient to support a legally viable good faith defense to the specific charges of the Indictment of conspiracy to commit wire fraud, wire fraud, and money laundering the proceeds of wire fraud. *See United States v. Chavis*, 461 F.3d 1201, 1209 (10th Cir. 2006) (jury instruction regarding good faith defense is proper where defendant has presented evidence "rebutting all evidence of false and misleading conduct, all failures to disclose that which should have been disclosed and all matters that deceive and were intended to deceive another"); *accord United States v. Grose*, 461 F. App'x 786, 794 (10th Cir. 2012).

In contrast to the vague generalities of good faith asserted by Defendant, she previously admitted that she committed the offense charged in Count 12 of money laundering proceeds from a fraudulent mortgage transaction. Defendant stated – in both her plea petition and hearing testimony – that she wanted to take criminal responsibility

because she was in fact guilty of the offense charged in Count 12. *See* Petition Enter Plea of Guilty [Doc. No. 94] (hereafter, "Plea Petition") ¶¶ 40(c), 44; 4/5/11 Hr'g Tr. [Doc. No. 201-2] (hereafter, "Plea Hr'g") at 17:15-17. Defendant provided a written statement and testified unequivocally under oath that she facilitated a fraudulent mortgage transaction by providing down-payment assistance to Mr. Gipson through a third party, knowing that the lender would receive false information about the source of the funds and that Mr. Gipson would use the money as his own, and that she received the money back after the loan and deposited it into her bank account, disguising the fact that it was repayment for the money she had loaned Mr. Gipson for the down payment. *See* Plea Petition ¶ 49; Plea Hr'g at 13:18-17:4. Defendant expressly admitted that when depositing the third party's check, she "knew that it was the proceeds of unlawful activity." *See* Plea Hr'g at 16:8-11. These admissions show Defendant's intent to defraud, which "necessarily implies that there was no good faith." *United States v. Bowling*, 619 F.3d 1175, 1183 (10th Cir. 2010).

To establish deficient performance, Defendant largely relies on statements made by Mr. Jones that reflected concern about whether Defendant possessed the requisite intent to commit the money laundering offense to which she pleaded guilty; she argues that her attorneys failed to consider or to advise her about the legal significance of this concern.[7]

---

[7] Defendant also relies on testimony by Ms. Davis at the hearing on Defendant's amended motion to withdraw her guilty plea, in which Ms. Davis was questioned about an email communication with Defendant where Ms. Davis stated that Defendant's beliefs about the transactions were "not legal defenses." *See* Def.'s Supp. Br. at 15. Defendant presents an isolated excerpt of Ms. Davis' testimony out of context, and fails to acknowledge Ms. Davis' explanation that she "was trying to say that [Defendant's] ignorance was – is not a defense" to the charge of conspiracy. *See* 11/11/13 Hr'g Tr. 12:13-15:25.

Mr. Jones' statements to which Defendant refers were offered in the context of supporting the original motion to withdraw her guilty plea, at a time when Defendant's mental competence was in question. It was later determined, however, that her alleged incompetence was feigned. This determination was possible only after an inpatient evaluation during which Defendant's conduct and interactions with others (particularly her family members) could be observed and monitored by mental health professionals. In short, the evidence on which Defendant relies is not probative of any errors by her attorneys but, instead, shows their zealous representation of her.

Notably, Defendant fails to identify any facts – either from identified witnesses or any other source – that would provide a defense to the charge of which she stands convicted, or similar charges of the Indictment that were later determined by the Court to constitute relevant conduct for sentencing purposes. *See* Statement of Reasons [Doc. No. 310] (sealed) at 6-8 (ECF page numbering). Defendant's guilt of the money laundering offense in Count 12 was established by her own testimony. There is no basis in Defendant's allegations or proposed evidence from which to conclude that Mr. Jones and Ms. Davis failed to provide competent advice regarding her plea agreement with the government.[8]

In summary, Defendant's original attorneys considered her assertions that she thought everything she did was legal and she honestly believed she had done nothing

---

[8] The record shows that, contrary to Defendant's vague allegations of incompetence, her attorneys skillfully negotiated a favorable plea agreement. *See* Sealed Exhibits, Ex. 6 [Doc. No. 277-5] (email from Jones to Defendant dated 4/11/11 explaining concessions obtained from the government).

wrong. The only time they wavered in their belief that she lacked a viable defense to the charges is when Defendant was feigning mental incompetence. The Court has previously found from facts shown by the record, however, that Defendant "manipulated and purposely delayed these proceedings" to avoid a custodial sentence, and that she "received careful attention and skillful representation from two experienced criminal defense attorneys." *See* Order at 9, 10 (2013 WL 6230627 at *5, *6) (footnote omitted). The existing record shows that Defendant's claim of errors by her attorneys in investigating her defense and counseling her to plead guilty lack merit.

Therefore, the Court finds that Defendant has failed to show deficient performance by her attorneys.

**B.     Prejudice**

The Court further finds that Defendant's allegations fail to satisfy either the objective or the subjective components of a showing that she would not have pleaded guilty if her attorneys had performed differently.

First, as discussed above, the record is clear that Defendant did not plead guilty to a crime of which she was innocent, and Defendant has failed to show that assertion of a good faith defense likely would have succeeded at trial. Viewed objectively, Defendant's decision to accept the plea agreement skillfully negotiated by her attorneys was rational under the circumstances. *See supra* note 8.

Further, Defendant makes only conclusory arguments in her supporting brief that she would have insisted on going to trial but for counsel's alleged errors. In contrast, the knowing and voluntary nature of Defendant's guilty plea has been twice decided by the

Court: 1) when accepting her guilty plea (*see* Plea Hr'g at 18:18-22); and 2) when denying her amended motion to withdraw the plea. *See* Order at 12-16 (2013 WL 6230627 at *7-*9). On the last occasion, after an evidentiary hearing, "the Court [found] it clear that Defendant knowingly and voluntarily entered her guilty plea to Count 12," and then "engaged in calculated manipulation of the judicial process in order to avoid a decision she now regrets." *Id*. at 16 (2013 WL 6230627 at *9).[9] In rejecting Defendant's conclusory allegation that she would have insisted on going to trial but for counsel's advice, the Court was particularly persuaded by an exchange of communications between Defendant and Mr. Jones on the eve of the change-of-plea hearing; she responded to an assurance from Mr. Jones that her decision whether to plead guilty was entirely hers to make by stating: "'I do not even know what you are talking about[.] I am accepting the plea agreement[.] I do not want to go to trial.'" *Id*. at 11 (2013 WL 6230627 at *6) (quoting Sealed Exhibits, Ex. 9 [Doc. No. 277-8]). Thus, viewed subjectively, Defendant's own statements and actions undercut her argument that she would have insisted on going to trial.

---

[9] The Court further found:

> The evidence regarding communications between Defendant and her attorneys reflect cogent discussions regarding the pros and cons of pleading guilty, candid advice from counsel in favor of accepting the plea bargain, and clear statements by the attorneys that Defendant's decision to plead guilty was entirely hers to make. In contrast, Defendant's subsequent communications with her attorneys show she became determined to find a way out of the plea agreement to avoid the prison time recommended by the presentence report.

*Id*. at 14 (2013 WL 6230627 at *8).

12

The Court finds in Defendant's current allegations and evidence nothing that would change its prior assessment that Defendant has failed to show she would have gone to trial but for deficient conduct or advice of her attorneys. Therefore, the Court finds that Defendant makes an insufficient showing of prejudice to support her claim of ineffective assistance of counsel.

## Conclusion

For these reasons, the Court finds that that Defendant's claim of ineffective assistance of trial counsel lacks merit and must be denied.

IT IS THEREFORE ORDERED that Defendant Trina Tahir's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence [Doc. No. 314] is DENIED. A separate judgment shall be entered.

IT IS FURTHER ORDERED that pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a movant. A COA may issue only upon "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. §2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration, the Court finds this standard is not met in this case. Therefore, a COA is denied, and the denial shall be included in the judgment.

IT IS SO ORDERED this 8th day of May, 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE